UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| NORMAN RICHARDSON, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:22-CV-01625-AAQ |
| UNITED STATES OF AMERICA, | * | |
| Defendant | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case concerning a man who slipped and fell on stairs which he admitted he knew were slippery. Pending before the Court is Defendant United States of America's Motion for Summary Judgment, ECF No. 33, on Plaintiff Norman Richardson's single claim for negligence, ECF No. 4, at 5. Although the facts of this case are not unique, Plaintiff's admissions are. During his deposition, Plaintiff admitted that: 1) he traveled on the stairs, on which he slipped, several times each evening, including twice on the evening on which he fell prior to his fall; 2) he knew that the stairs were often slippery, including on the evening when he fell; 3) as a result, he had slipped on the same stairs in the past; and 4) despite this knowledge and experience, he walked on the stairs and, as a result, fell. For the foregoing reasons and the reasons discussed below, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

The facts of this case are fairly straightforward; for the most part, undisputed; and based exclusively on the deposition of Plaintiff which occurred on June 7, 2023.[1] As of February 2021, Plaintiff worked as a "floor tech" for Didlake, Inc.,[2] cleaning different areas of the White House. ECF No. 33-2 at 84:22-24, 22:5-24:25. Plaintiff regularly worked overnight, Thursday through Monday, beginning around 7:30 P.M. each evening and finishing around 4:30 A.M. each morning. *Id.* at 20:6-23. Each shift would usually begin with a safety meeting and/or training associated with COVID, after which Plaintiff's supervisor would let Plaintiff and his colleagues know what their respective assignments were. *Id.* at 22:9-13, 24:11-12. As part of his assignment, Plaintiff regularly walked up and down the stairway where he eventually fell. According to Plaintiff, he walked these steps "[j]ust about every day, every night," *id.* at 25:14-20, "several times a day," *id.* at 26:7-9.

On February 22, 2021, Plaintiff arrived to the White House around 7:30 or 8:30 P.M. *Id.* at 27:2-5. Plaintiff described the conditions that evening as "icy", "cold", "snowy" and "freezing". *Id.* at 27:6-14. This was not the first time that Plaintiff had worked in such conditions at the White House. *Id.* at 27:15-19. Nor was it the first time that Plaintiff had walked on those steps in those conditions. *Id.* at 28:20-29:2. As Plaintiff acknowledged, he had done so on multiple occasions before. *Id.*. When he had walked on those steps on prior occasions in those same conditions, he found the stairs slippery, *id.* at 29:3-5, and, as a result, had slipped. *Id.* at 45:11-13. Although the

---

[1] The United States has presented only the deposition of the Plaintiff in support of its Motion for Summary Judgment. ECF No. 33. In response, Plaintiff relies only on the deposition transcript, as well. ECF No. 34.

[2] Didlake, Inc. is a non-profit rehabilitation services organization whose mission is to create opportunities and enrich the lives of people with disabilities. ECF No. 33-2, at 17:9-12. Plaintiff does not have a disability. *Id.* at 17:19-20.

lights were off in the stairwell on the night of Plaintiff's fall, this was not the first time this had been the case. *Id.* at 31:18-32:5.

On the night of his fall, Plaintiff walked the stairs on two occasions prior to his fall. *Id.* at 39:24-40:4. On both of those prior occasions, the stairs had been slippery, *id.* at 40:5-7, though he didn't necessarily know it was because they were icy, *id.* at 42:1-3. Sometime that evening, a secret service agent directed Plaintiff to walk up those stairs a third time. *Id.* at 43:1-5. Although Plaintiff had walked the stairs on two prior occasions that evening and found them to be slippery, the condition of the stairs "slipped [his] mind" when he chose to walk them a third time. *Id.* at 43:9-20. When Plaintiff reached the top of the stairs, he placed his right foot on the floor, after which his foot slipped. *Id.* at 36:8-11. Plaintiff fell, landing face first, *id.* at 37:2-5, although he was able to brace himself as his two hands broke his fall before his face hit*, id.* at 37:6-9. After his fall, Plaintiff returned to work for two days before leaving employment with Didlake. *Id.* at 13:25-1410. Plaintiff currently works with Institution Defense Analysis where he provides security services*. Id.* at 11:16-19.

On July 1, 2022, Plaintiff filed his initial Complaint alleging that the United States's negligence had caused the injuries from his fall. ECF No. 1. The Complaint additionally included a count for negligent hiring, training and supervision, but Plaintiff excised that count when he filed his Amended Complaint. ECF No. 4. On November 22, 2022, the case was reassigned to the undersigned for all further proceedings. ECF Nos. 13, 14, 17. The Court subsequently granted multiple requests for extension of the discovery deadline. ECF Nos. 19, 22, 24, 26, 28. Accordingly, neither party has contested that the amount of time the Court allowed for discovery. On June 6, 2024, Defendant filed its Motion for Summary Judgment. ECF No. 33. The parties have since completed briefing the pending Motion. ECF Nos. 34, 37.

3

**STANDARD OF REVIEW**

The Court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. U.S.*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker*

*Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002)).

## ANALYSIS

Defendant's Motion raises one argument – because Plaintiff was aware that the stairs were slippery, he assumed the risk of falling when he walked on them.  The argument is well-supported given Plaintiff's repeated admissions during his deposition.

Under Maryland law, to assert a negligence claim, a plaintiff "must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013) (emphasis omitted) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270-71 (Md. 2007)).

Assumption of risk is a complete bar to a plaintiff's negligence claim.  *See ADM Partnership v. Martin*, 702 A.2d 730, 734 (1997) ("[I]f established, it functions as a complete bar to recovery because 'it is a previous abandonment of the right to complain if an accident occurs.'" (quoting *Warner v. Markoe*, 189 A. 260, 264 (Md. 1937))).  To prove the assumption of risk defense, the defendant must show the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated the risk; and (3) voluntarily confronted the risk of danger.  *See Liscombe v. Potomac Edison Co.*,  495 A.2d 838, 843 (1985); *Odenton Dev. Co. v. Lamy*, 575 A.2d 1235, 1239-1240 (1990).  "The question of whether the plaintiff had knowledge and appreciation of the particular risk at issue is ordinarily a question for the jury, 'unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'" *Thomas v. Panco Mgt. of Md., LLC*, 31 A.3d 583, 588 (Md. 2011) (quoting *Schroyer v. McNeal*, 592 A.2d 1119, 1123 (1991)).  "Where it is clear, however,

5

'that a person of normal intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the court.'" *Id*. (quoting *Schroyer*, 592 A.2d at 1123).

The Court of Appeals of Maryland has stated that ". . . in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law, we require that a plaintiff 'must' have known that the risk was 'actually present,' not that he or she 'would,' 'should,' or 'could' have known that the risk 'might well be present.'" *Id.* at 590 (citing *Kasten Constr. Co. v. Evans*, 273 A.2d 90, 94 (Md. 1971)). Under Maryland law,

> [c]ourts may only impute knowledge to the plaintiff, as a matter of law, when there is undisputed evidence of awareness, e.g., physical interaction with or sensory perception of the dangerous condition . . .; the risk of danger is so obvious that any person of normal intelligence will be taken to comprehend it...; or the risk is an usual and foreseeable consequence of the plaintiff's conduct. . . .

*Id*. at 591 (internal citations omitted). Aside from these circumstances, the Maryland Court of Appeals has held that "'[w]here there is a dispute whether the risk is assumed or not, that question is usually left to the jury' . . . because the role of the fact finder is to assess the credibility of the evidence and to draw a conclusion from among the inferences which may be reasonably drawn from that evidence." *Id*. at 591 (quoting *Bull S.S. Line v. Fisher*, 77 A.2d 142, 147 (Md. 1950)).

Plaintiff's deposition indisputably establishes that he was aware the stairs were slippery on the day that he fell, knew that if he walked on them he may slip, and nonetheless, chose to walk on them resulting in his fall. As Plaintiff testified, he regularly walked on the stairs on which he fell – several times each time he worked, including twice before on the evening when he fell. The stairs were often slippery, including on the two occasions that he had walked them on the same night he fell. Although Plaintiff denied that he knew that the stairs were slippery because of ice, he acknowledged that the general conditions were icy, snowy, freezing and cold. Further, regardless of whether he knew that the stairs' slipperiness was due to ice, Plaintiff was aware of

6

the danger that the stairs when slippery posed, as when he had walked on them in the recent past, he had slipped. Nonetheless, despite his knowledge that the conditions were icy and cold, that the stairs were slippery, and that he would slip if he walked on them, he chose to walk on them. Although assumption of risk is generally a question for the jury and should only be taken from their hands in the rare case, Plaintiff's repeated admissions taken together satisfy this standard.

Plaintiff's arguments in response do not dictate a different result. While Plaintiff notes that the lights were off on the evening that he fell, this was not a new problem. As Plaintiff acknowledged, he had walked the stairwell twice on the same night, when the lights were out, found the stairs to be slippery and nonetheless voluntarily walked them a third time. Had Plaintiff not already walked the stairs while the lights were out, a different result may have been appropriate. Plaintiff's reliance on *Poole v. Coakley & Williams Construction, Inc., et al.* is similarly unhelpful. 31 A.3d 212 (Md. 2011); ECF No. 34-1 at 3-6. In *Poole*, "[the plaintiff] testified repeatedly that he saw ice in certain areas of the parking lot, but that he did not see ice, or suspect that it could be, in the stream of water that he believed would be a safe path to the building." 31 A.3d at 228. That was not the case here. Plaintiff did not travel on the stairs believing himself to have found a safe route. Rather, as he acknowledged, he knew the stairs to be slippery, but nonetheless chose to proceed.

**CONCLUSION**

For the foregoing reasons, Defendant United States of America's Motion for Summary Judgment is, hereby, granted. The Clerk's Office shall close the case.

So ordered.

Date: October 4, 2024

/s/
Ajmel A. Quereshi
United States Magistrate Judge